24018

Marvin BENTON and Dorothy Benton, Respondents v. ROGER C. PEACE HOSPITAL, Appellant. Michael Wayne BENTON, by his Guardian ad Litem, Marvin BENTON, Respondent v. ROGER C. PEACE HOSPITAL, Appellant.

(443 S.E. (2d) 537)

Supreme Court

*G. Dewey Oxner, Jr.* and *Edwin B. Parkinson, Jr.*, both of *Haynsworth, Marion, McKay & Guerard,* Greenville, *for appellant.*

*Kellum W. Allen,* of *Kirkland, Wilson, Moore, Allen, Deneen & Taylor, P.A.*, West Columbia; and *Kenneth M. Mathews,* Columbia, *for respondents.*

Heard Dec. 10, 1992.

Ref. Apr. 25, 1994. Reh. Den. May 18, 1994.

FINNEY, Justice:

We granted rehearing to consider our opinion in these cases. The prior opinion is vacated and the following substituted in its place.

These companion cases involve Michael Benton, a mentally retarded individual with Down's syndrome. Michael, through his father as guardian ad litem, brought an action alleging that Michael sustained injuries and was treated negligently at Roger C. Peace Rehabilitation Hospital, in Greenville. His agents, Marvin and Dorothy Benton, also brought an action to recover damages they sustained as a result of their son's injuries. A verdict against the hospital was recovered in both cases, with the Bentons being awarded a total of $175,000.00. We affirm.

During the summer of 1987, Michael began having difficulty walking. It was found that compression of the spinal cord was affecting the movement of his limbs, and surgery would be required. Surgery was performed in Columbia at Richland Memorial Hospital. After the surgery, Michael suffered a series of setbacks, the most severe of which left him temporarily paralyzed from the neck down.

Because of therapy at Richland Memorial and later, in-home therapy, Michael's arms and legs began regaining strength to the point that he could walk short distances without assistance. Although these improvements continued, Michael's physical condition was worse than it was before surgery. Michael's physicians recommended that his rehabilitation might progress more rapidly at a rehabilitation facility. On December 2, 1987, Michael was admitted to Roger C. Peace Rehabilitation Hospital (the hospital).

During his stay at the hospital, Michael was generally uncooperative and his condition began deteriorating. Toward the end of his stay, Michael began suffering from spasms. Because of the spasms, Michael had difficulty staying in his wheelchair as well as completing his therapy. Once Michael fell to the floor face down while strapped into his unattended wheelchair. The injury resulted in stitches to his lip and a subsequent root canal. Several other times Michael slid to the floor during therapy or while being strapped into his wheelchair. Michael was discharged on December 28, 1987. It is uncontradicted that although his neurological condition remained constant, Michael's general condition at discharge was worse than when he was admitted twenty-six days earlier. The day he returned home to his parents, he was admitted to Richland Memorial where he was given antispasmodic medication.

The present actions were filed on February 23, 1990. On June 3-6, 1991, the consolidated actions were tried before a jury. The jury found in favor of the Bentons in both cases, awarding Michael $100,000.00 in actual damages and awarding his parents $75,000.00 in actual damages. This appeal followed.

The parties stipulated that the hospital is both a "governmental health care facility" within the meaning of S.C. Code Ann. 15-78-30(j) (Supp. 1993) and a "charitable organization" under S.C. Code Ann. § 33-55-200(a) (1990).

The sole issue of merit in this appeal is whether this action is controlled by the provisions of the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 et seq. (Supp. 1993) or by the provisions of § 33-55-210, the liability statute for charitable organizations. The trial judge held the Tort Claims Act prevails. We agree.

The Tort Claims Act restores the tort immunity of governmental entities except as waived by the Act itself. S.C. Code Ann. § 15-78-20(b) (Supp. 1993). In its last sentence, this subsection specifically provides that the Act is the "exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15-78-70(b)." *Id.* Where the language of a statute is plain and unambiguous, its terms should be given their clear meaning. *Miller v. Doe*, ___ S.C. ___, 441 S.E. (2d) 319 (1994). The Act clearly states it provides the exclusive remedy for governmental torts such as those at issue here and the trial judge properly held the Tort Claims Act controls.

On the issue of the jury's verdict as to damages, the hospital urges us to examine the nature of the injuries and the time of discovery of those injuries against the statute of limitations. The hospital argues that there were two separate injuries presented at trial and that one injury was time-barred while the other was not. We agree.

The first claim for injury related to the actual fall from the wheelchair which resulted in Michael's cut lip and broken teeth, while the second claim arises from Michael's neurological deterioration. The hospital argues that the first injury was obvious and made known to the parents on the date it occurred. The testimony of the parents establishes that they had knowledge of the injury, the conditions surrounding the injury, and the resulting facial damages by December 22 or 23, 1987, yet the summons and complaint were not served until February 23, 1990. The hospital argues that the initial facial injuries were outside the applicable statute of limitations, and that the submission of the related damages to the jury infected the award of damages. We agree.

At trial, the first injuries were argued in counsel's opening statement and closing argument, the related dental bill was admitted into evidence through the father, Mr. Benton's testi-

mony, and the question of expert and lay opinion was submitted to the jury under the "common knowledge" exception to the expert testimony rule. There is no question that the initial facial injuries were discovered by Michael's parents almost immediately after the fall, and that Michael's parents were also aware that the fall was a result of the hospital leaving Michael unattended.

The statute of limitations begins to run when a cause of action reasonably ought to have been discovered. In determining whether the cause of action should have been discovered, it must be decided when the facts and circumstances of the injury would put a person of common knowledge on notice that some right has been invaded or the claim against another party exists. *Smith v. Smith*, 291 S.C. 420, 354 S.E. (2d) 36 (1987); *Snell v. Columbia Gun Exchange*, 276 S.C. 301, 278 S.E, (2d) 333 (1981). On the present facts, the facial injuries were reasonably discoverable more than two years before this action was filed; therefore, the statute of limitations acts to bar any damages for the facial injuries.

The second and more insidious injury arose from the neurological damage which could have been caused by the fall from the wheelchair or from some other failure to properly care for Michael. The nature of the injuries was not readily discoverable and it is clear from the record that the discovery of the existence of the claim for neurological injury arose within the appropriate statutory time limit for presentation to the jury.

The record contains more than ample support for the jury's findings of liability for neurological injuries which were not time barred; however, the inclusion of the first and obvious injuries in the jury's determination of damages infected the jury award. Because the jury's award includes certain damages, which were time barred, we must reverse and remand for a determination of the proper damages arising from Michael's neurological injury.

We find no merit in the remaining exceptions and, therefore, the appeal is AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

CHANDLER, TOAL and MOORE, JJ., concur.

HARWELL, C.J., not participating.